MATTER OF NEWTON

In Deportation Proceedings

A-14059088

*Decided by Board May 12, 1967*

A dual national at birth of the United States and Canada who applied for and received a Certificate of Retention of Canadian Citizenship pursuant to section 21(2) of the Canadian Citizenship Act thereby voluntarily sought or claimed the benefits of Canadian nationality within the meaning of section 350 of the Immigration and Nationality Act.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Exludable at entry under section 212(a)(20) [8 U.S.C. 1182]—Immigrant, no visa.

ON BEHALF OF SERVICE: R. A. Vielhaber
Appellate Trial Attorney
(Oral argument)

This case is before us on certification of the special inquiry officer who found the respondent deportable on the charge contained in the order to show cause and granted voluntary departure. The case has been certified to us for review and final decision.

The record relates to a 29-year-old married male alien, who acquired dual citizenship at birth, United States and Canadian. United States citizenship was acquired through birth in the United States and Canadian citizenship through his father who was then a Canadian citizen. Respondent last entered the United States at Detroit, Michigan on or about March 12, 1966, and was admitted upon his statement that he was born in Detroit, Michigan. Respondent has a United States citizen wife and one United States citizen child who live in the United States. When respondent last entered the United States it was his intention to live and work in the United States.

The special inquiry officer found that respondent lost his United States citizenship on November 12, 1958 under section 350, Immigration and Nationality Act (8 U.S.C. 1482) by reason of his applica-

tion for and receipt of a Certificate of Retention of Canadian Citizenship. Section 350 provides as follows:

A person who acquired at birth the nationality of the United States and of a foreign state *and who has voluntarily sought or claimed benefits of the nationality of any foreign state* (emphasis supplied) shall lose his United States nationality by hereafter having a continuous residence for three years in the foreign state of which he is a national by birth at any time after attaining the age of twenty-two years unless he shall—

> (1) prior to the expiration of such three-year period, take an oath of allegiance to the United States before a United States diplomatic or consular officer in a manner prescribed by the Secretary of State.

It is conceded that respondent did have dual citizenship at birth, that he had a continuous residence of three years in the foreign state of which he is a national after attaining the age of 22 years, and that he did not take an oath of allegiance to the United States as provided in subsection (1) above. The question for our determination is whether respondent had in fact voluntarily sought or claimed benefits of the nationality of any foreign state (Canada). The special inquiry officer found that he had received such benefits by virtue of the aforementioned Certificate of Retention of Canadian Citizenship.

In determining whether the benefit sought or claimed has an expatriatory effect we are guided by the language of *Matter of R—S—*, 7 I. & N. Dec. 718 (1958), as follows:

> * * * Nevertheless, it is believed that the benefit voluntarily sought or claimed by the dual national should be substantial and indicative of an intention to express some elements of preference to another country in a measure inconsistent with American citizenship.

Thus, citizenship will not be forfeited lightly in connection with some trivial matter and the benefit sought by the dual national should be of a nature inconsistent with a claim to the United States citizenship.

To see what benefits respondent received by reason of his seeking and receiving this Retention of Canadian Citizenship Certificate, we set forth below the applicable portions of Canadian law. By virtue of respondent having been born of a Canadian citizen father he acquired Canadian citizenship at birth under section 4 of the Canadian Citizenship Act of 1946 which provides—

> 4. (1) A person born before the first day of January, 1947, is a natural-born Canadian citizen if
>> (a) . . .
>> (b) he was born outside of Canada elsewhere than on a Canadian ship and was not on the first day of January 1947 an alien, and either was a minor on that date or had before that date, been lawfully admitted to Canada for permanent residence and his father, or in the case of a person born out of wedlock, his mother
>>> (i) was born in Canada or on a Canadian ship and was not an alien at the time of such person's birth.

222

Section 21(2) of the Canadian Citizenship Act provides for the retention of Canadian citizenship by one who acquired such citizenship under section 4(1) (b) above—

> (2) A person who is a Canadian citizen under paragraph (b) of subsection (1) and was a minor on the first day of January, 1947 ceases to be a Canadian citizen upon the date of the expiration of three years after the day on which he attains the age twenty-one years or on the first day of January 1954, whichever is the later date, unless he
>> (a) has his place of domicile in Canada on such date; or
>> (b) has, before such date and after attaining the age of twenty-one years, filed, in accordance with the regulations, a declaration of retention of Canadian citizenship.

Thus, under the above sections of Canadian law, respondent would lose his Canadian citizenship if he were not domiciled in Canada on his twenty fourth birthday unless he has between his twenty first and twenty fourth birthdays filed a declaration of retention of Canadian citizenship. Respondent filed such declaration when he was 21 years old.

We feel that the benefits accrued to respondent by virtue of his having sought and obtained this Certificate of Retention of Canadian Citizenship were substantial and indicative of a preference for a foreign country to a degree inconsistent with United States citizenship. Not only the actual act in obtaining this certificate indicated a preference for a foreign country to a degree inconsistent with United States citizenship, but testimony of respondent, set forth below, indicates beyond any doubt that he fully intended to keep his Canadian citizenship and give up his United States citizenship.

What are the benefits that were received by respondent? First, applying for and receiving the certificate assured him that he would not lose his Canadian citizenship under the provisions of section 21(2) quoted above. Secondly, this certificate relieved him of the necessity of being domiciled in Canada on his twenty fourth birthday. Finally, obtaining this certificate assured him that he could then lose his Canadian citizenship only by taking some affirmative action.

On October 19, 1965 respondent in an affidavit stated: "When I was 21 years of age I elected to be a Canadian citizen. My attorney in Windsor arranged this for me. I consider myself now to be a Canadian citizen." On May 2, 1966 respondent in a supplementary affidavit stated "Therefore when I turned 21 I decided because I had lived all of my life in Canada, and that time my friends, interests, and future seemed to lie in Canada, my only choice would be to choose Canada as my country of citizenship." Finally, on November 14, 1966 respondent stated "About October 1958 I filed my retention of Canadian citizenship application. I had been informed that I would have to make a

choice of citizenship when I became 21, and I had discussed this with my attorney. At that time it was my choice to be a Canadian citizen. That is why I filed for my retention of Canadian citizenship."

These statements are quite indicative of the fact that the benefits sought as well as respondent's reasons for seeking these benefits show a preference for a foreign country to a degree inconsistent with United States citizenship.

The record contains much discussion and argument relative to respondent's draft status in the United States. When respondent received the aforementioned certificate, the United States authorities changed his draft classification from 1-A to 4-C, which excused him from serving in the Armed Forces of the United States. The special inquiry officer held that this was not a benefit within the contemplation of section 350. It is not necessary to a decision in this case for us to review and decide this point as the case will be disposed of on the grounds hereinbefore set forth.

We concur with the findings of the special inquiry officer that respondent is deportable and that the facts alleged as grounds for deportation are true and are based upon clear, unequivocal, and convincing evidence.

ORDER: It is ordered that the decision of the special inquiry officer on March 10, 1967 finding respondent deportable but granting voluntary departure from the United States be and the same is hereby affirmed.